thank you. Thank you. Thank you. Thank you. We're going to move now to the last case of the morning. This is appeal 22-29 58 Betty Jackson versus the sheriff of Winnebago County, Illinois. We're going to begin with oral argument from Miss Barlow. May it please the court. When Lamar Simmons woke in the middle of the night to the sounds of Eugene Washington struggling to breathe, Washington was still alive. When Simmons dialed the emergency line and Correctional Officer Jeff Valentine let the call ring for a minute, Washington was still alive. When Simmons told Valentine that Washington couldn't breathe, Washington was still alive and he was still alive eight minutes later when the two correctional officers, now looking over Valentine's shoulder, heard Simmons please for help and rushed to Washington's cell. But by the  Washington was dead and the question for this court is whether a reasonable jury could find that when Valentine ignored Simmons' calls for help and unconstitutionally denied Washington the medical care he so desperately needed, Valentine decreased Washington's chances of survival. A jury could reach... Miss Barlow, could I just clarify because there was some inconsistency in the briefing and I just heard you say deny. Is this a denial of medical care or a delay of medical care case? It seems like it's been litigated as primarily as a delay but the denial keeps coming in there. It is a delay of medical care case, Your Honor, and we're content to litigate it under that standard because we do believe that we can point to verifying medical evidence as this court's precedent addresses. And I can go through the evidence that in our view supports a finding of causation. First, a jury could conclude that Washington was alive at the time that Simmons made the first call based on Simmons' testimony that he was breathing, Dr. Peter's testimony that he was still alive, and the EMT report estimating that his heart didn't stop until 15 to 17 minutes later. A jury could also conclude that Washington's chances of being resuscitated would have been higher if Valentine had responded immediately based on the fact that if Valentine had responded right away, officers would have arrived in the cell before Washington stopped breathing instead of after, based on the fact that the EMTs would have arrived before his heart stopped as opposed to after, based on the prison protocol providing that officers must respond to an inmate in respiratory distress as quickly as possible, and based on the common sense notion that when someone can't breathe, time is of the essence, and life-saving measures like CPR must be deployed without delay. A jury could also find that even by the time the officers and the EMTs arrived in Washington's  alive and revivable based on both the AED evidence and the EMT's decision to initiate care. We have to be careful on the application of common sense to the scientific record. Can you help explain why the medical record is sufficient to support your position? I think both contribute to our position, and I just want to emphasize that it's appropriate to rely in part on common sense under this court's decision in Gill v. Reed as part of the causation inquiry. Now what the evidence from medical sources tells us is that this was a critical window in which intervention was needed, the period of time in which care was denied. So we know from Washington's symptoms that he was breathing at the time Simmons made the first call, that he was still breathing at the time of the second call, that his breathing slowed after the second call and stopped as the officers were arriving. And we know that his heart stopped between 4.52 and 4.54 a.m. from the EMT report, which the district court disregarded. So what all of that tells us is that his condition was deteriorating, and Valentine's delay prevented officers from getting there while he was in a better state of health, while he was still breathing, while his heart was still beating. We can also add to that the common-sense intuition that when it comes to respiratory distress when someone can't breathe, medical care providers need to respond as quickly as possible. And I think that the jail's policy helps provide support from which a jury could conclude that that's the case. Multiple officers testified that prison protocol provides that officers have to respond as quickly as possible, and a jury could infer from that that that reflects the institution's reasoned judgment that the chances of a victim surviving are better if officers rush to the victim's side as opposed to waiting for 10 minutes or more before providing care. I also want to just emphasize that juries would bring their common experience to this inquiry, the fact that they see AEDs in schools and airports. Indeed, there's an AED outside this very courtroom, not in the lobby, not on the 10th floor, but right outside the door. And that would inform juries' intuition that an AED and other life-saving devices need to be brought to bear as quickly as possible. The district court misread this court's verifying medical evidence precedent because it focused only on Dr. Peter's testimony, and I think in the process the district court both ignored some of the other evidence that I've discussed from both medical and non-medical sources, and also failed to draw the inferences from Dr. Peter's testimony in the light most favorable to Washington. On that final point about the inferences, I'd emphasize that Dr. Peter's testified that Washington was in a state of arrhythmia from the time when Simmons made the first call up until the time that he died, which supports the conclusion that he was alive for a period of time after that call and undermines the defendant's argument that he was dead from the outset. The other key error in the district court opinion that I want to highlight on the causation inquiry is that the district court failed to  repeatedly held that a defendant causes injury to a victim when the defendant decreases the victim's chances of survival. And the district court's conclusion on that score is flatly in conflict with Miranda V. County of Lake, and Valentine does not and cannot contest that the area of injury exists on appeal. I also just want to spend a minute on the 14th Amendment, if there are no other questions about causation at this time. There's a genuine dispute of fact in the record about whether Valentine heard what Simmons said, and if he did in fact hear what Simmons said, that Washington couldn't breathe, even Valentine doesn't try to defend his conduct as reasonable. And whether that's because after hearing Simmons say Washington couldn't breathe, he purposefully denied medical care or recklessly failed to take Simmons seriously, he's still liable under this court's 14th Amendment precedent. If there are no other questions, I reserve the remainder of my time. Very good. That rebuttal time will be reserved, and we'll now move to argument on behalf of the appellee, Mr. Vincent. Thank you. Good morning. Please, the court, Josh Vincent, on behalf of the defendant, Sheriff of Winnebago County, and Jeff Valentine. Judge Flom, I heard the applause on the 40th anniversary. I want to congratulate you. I heard the applause on your 40th anniversary. I was in the attorney's room. I'm also since my 40th anniversary at HNCHI started 40 years ago yesterday. Long time. You know, when you look at the, for lack of a better term, the mind run of cases that this court has decided on the delay in medical care, in Section 1983 cases, it seems pretty clear that there's a pattern. The question of how much or what quantity or quality of verifying medical evidence is needed really seems to depend on the complexity of the medical problem that's at issue. And so you look at cases like Gill versus Reed, which was mentioned up here, where there's a delay in giving an antibiotic for an infection that's caused pain. Pretty clear connection between the foreseeability of pain and suffering and cause in fact of that pain and suffering when it's been withheld. Williams, another very clear case where you have someone who's got angina and blacks out. They get blood pressure medication and nitroglycerin relieves the problem immediately. You can see the two components, the two prongs of causation are present. Foreseeability is there. Cause in fact is there. You don't really need any more than those bare facts. Do you agree that the causation question here is whether or not Officer Valentino's actions or lack thereof decreased Mr. Washington's chance of survival? I think that's how the case has been presented. Yeah, it's a diminished chance of survival case. I think that's how they've postured it. And when you get now into that complexity of the issue, you know, I want to, some of the arguments that have been made, just a couple of the points I wanted to address. You know, counsel talks about that he was alive. Well, the fact that he was breathing or that there may have been, you know, pulseless electrical activity detected by an AED doesn't give rise to an inference or a case that he was alive. It's a case that has helped the jury determine that if someone had gotten there in three minutes or five minutes or eight minutes that he would have been revivable, that he could have been saved. That is a completely separate and distinct question. You know, counsel makes the argument, well, his heart didn't stop until after 15 minutes, because that's what's in the EMT report. Again, that overlooks the detail that the EMT report is an estimate and that timeframe that they've assessed. But we have to draw inferences in the light most favorable. Maybe it is an inference, but the EMT's report and testimony supported that. Well, all it shows, the only inference that I think it fairly supports is that that's the moment guards arrived and checked for a pulse and found none, because that's what that timeframe coincides with, is that 4.50 or 4.52 a.m. timeframe is when the guards arrived in the cell. That's the first time anybody checked for a pulse, but that doesn't mean, especially under Dr. Peter's testimony, that his pulse hadn't stopped five minutes before that, because there was no one there to check it. We know that the cellmate didn't check it. But why can't you draw an inference from the defibrillator evidence that it did detect heart activity at 4.52? It detected what they call pulseless electrical activity, but that doesn't create the inference that the person is revivable at that moment. I mean, they administered the shock and it didn't help. So if it didn't work at that moment in time, what evidence establishes that if the shock had been administered five minutes earlier, it would have worked? That's what's missing in this case. This is a complex case medically. We don't know how long this man was oxygen deprived because of the sleep apnea. Under Dr. Peter's own testimony, we don't know how long he was in the state of arrhythmia. We don't know how quickly or slowly that arrhythmia, I mean, again, giving them the benefit of the doubt, the problem here is that Dr. Peter's testimony that the arrhythmia could lead to a fatal state very rapidly or very slowly is what creates the ambiguity that requires some medical evidence that's going to assist, that's the standard. What's going to assist the jury? How does a jury decide the question in this case without medical expert testimony? It's not like a case like Griefson where the guy's nose is broken and they don't get him surgery to fix his nose for 36 hours. It's not like the guy with the angina who gets nitroglycerin and you can see it's fixed right away. This case really looks more like something like Bass. Bass is probably the case that's closest factually to this, and in that instance, you had an expert cardiologist who could say that because the patient was found with a feeble pulse, not no pulse, a feeble pulse, that basic cardiopulmonary resuscitation within five minutes and advanced cardiac support within 10 to 15 would have saved him, or at least given him a 10 to 30% chance of survival. We have nothing remotely approaching that sort of testimony or evidence in this case, and that's what's essential, and that's part of the problem that I think the fundamental problem with the plaintiff's argument in this case is that it glosses over the distinction between foreseeability of harm and cause in fact. We know that in the Section 1983 context, the court has adopted the common law tort proximate cause principles tailored or viewed in a light in the context of a constitutional deprivation, but it's still that same familiar tort concept, and that's two-pronged. It's legal cause and it's cause in fact, and the evidence that they're relying upon here, the example of the defibrillator in the hall, all those things, the common sense approach, I mean, those go to the issue. I'm not conceding that this was foreseeable here because there's no evidence that anybody knew that this guy had a breathing problem. There's no evidence that they knew he had sleep apnea or anything of the sort, so the foreseeability is a little questionable even in this case. Well, but there was the initial call where Simmons told the officer, my celly can't breathe. But there's no evidence to contradict Valentine's testimony that that's not what he heard. But why the evidence is Simmons says he told him. I don't know how on a summary judgment motion we could conclude, well, you have to believe Valentine that he couldn't hear him. Even if I won't argue with you because I agree they do get the benefit of the inferences on this, and even if I would grant you that inference, you still have only satisfied at most the foreseeability prong of proximate cause. You still haven't satisfied that tie-in, that link or connection to cause in fact, that in fact failure of someone to get there sooner made a difference or caused him harm. That if they had gotten there in three minutes after the first call, he would have still been, you know, CPR and a defibrillator would have changed the outcome or improved his chance of survival. There's just nothing for a jury to hang their hat on to try and decide that question in this case. And that's exactly where the district court went on this. The district court, you know, again, you come back to some of these facts. You know, can't breathe. You know, again, that's a foreseeability fact, but that's not cause in fact because that doesn't tell us when his heart stopped or whether, assuming it was even still a febrile pulse, whether he was revivable at that point as you had in the Bass case. You look at the case that was cited here, Miranda, the Miranda case, a case involving starvation. The inmate was starvating, has a mental incompetence problem, and what happens? You have expert testimony that explains. They needed to recognize the signs and symptoms of organ failure were imminent because of the starvation, and so you had the connection, the link that would establish cause in fact from failing to get that person to a hospital sooner for treatment, diminish their chances of survival. And, you know, I think the importance here, and Judge Brennan, maybe that was part of the point of your question about being careful about the science. It's fine, you know, when you are looking for verifying medical evidence in these more, these simpler cases involving a broken nose or angina or an infection, but, you know, inmates have more complicated problems than that. You know, they have issues of there's, I mean, prison population has cancer. You've had the case cited in the brief Pettis or Rowe involving, you know, hep C and cirrhosis. I mean, these can be more complicated, more difficult to treat, more difficult to identify when a delay in care, which is squarely how they framed their case here, has made a difference or caused a detriment, and that evidence is just simply not present in this case. There's nothing that the jury could really point at and say, if they had gotten here sooner, he would have had a little better chance. We can say that in concept. I think we all feel that way. I think we all think that way, but a lay jury needs some medical support in this case, more than just these inferences based that purely are going to the issue of foreseeability and not the cause and fact analysis. Unless the court has some questions. Thank you very much, Mr. Vincent. Thank you. Thank you. We'll now move Ms. Barlow to you for a rebuttal argument. Perhaps you could begin with this distinction that Mr. Vincent has drawn between the inference is going to foreseeability versus the remainder of the tort. Sure. So I think this case is primarily about the question of factual cause as opposed to legal cause. So what would have happened if Valentine had acted reasonably, he would have been arrested immediately. And our view is that the, like my discussion of Mr. Simmons testifying that Washington was able to breathe or was gasping for breath initially but then stopped breathing goes to his deteriorating condition and the fact that if Valentine had acted reasonably, EMTs and other officers would have arrived when he was in a better state of health. So I think it squarely goes to factual cause. I do want the chance to talk a little bit about the AED evidence and the EMTs providing care that the court was asking about. The AED detected electrical activity which determines not only that Mr. Washington was alive but in the AED's assessment and its calculation from the signals that it was getting from his body that giving him a shock would not be futile. And we can draw the same inference from the fact that the EMTs decided to initiate care, continued providing care and that the EMT report reflects that when they arrived at the hospital resuscitation was ongoing. That a jury could take that into account and determine that in those EMTs professional judgment earlier there was still a chance that Mr. Washington could be revived even at that later point in time. And I think if you put together the evidence that he could have been revived even then with the fact that his health seemed better ten minutes earlier and with the fact that multiple pieces of evidence in addition to the fact that he had a prompt response to someone who can't breathe has a higher likelihood of working along with that common sense intuition that we've talked about, a jury could conclude that Valentine decreased Washington's chances of survival by failing to provide help right when Simmons made the first call. If there are no other questions we ask the court to reverse. Thank you very much. Thank you Ms. Barlow. Thank you Mr. Vincent. The case will take    argument. Thank you for your time and your advice and we appreciate the advocacy of both parties. That will close the court's oral arguments for the